UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: DIPAKKUMAR VANMALIBHAI PATEL and
PADMABEN DIPAKKUMAR PATEL,

No. 7-10-12627 JA

Debtors.

HASMUKHBHAI K. PATEL and
USHABEN H. PATEL, individually
and in their capacity as members of
ROSHAN HOSPITALITY, LLC,

Plaintiffs,

v.

Adversary No. 10-1200 J

DIPAKKUMAR VANMALIBHAI PATEL,
PADMABEN DIPAKKUMAR PATEL and
ROSHAN HOSPITALITLY, LLC,

Defendants.

## MEMORANDUM OPINION

Before the Court is the motion to reconsider and amend judgment filed by Defendants. *See* Docket No. 145 (the "Motion"). Defendants seek reconsideration of a nondischargeable judgment in which the Court awarded damages in the amount of $35,946 on two claims for embezzlement under 11 U.S.C. § 523(a)(4). After carefully reviewing the motion, the record, and the relevant law, the Court concludes that the judgment should not be altered or amended.

BACKGROUND & PRIOR RULING

Plaintiffs Ushaben ("Usha") Patel and Hasmukhbhai K. ("H.K.") Patel filed this adversary proceeding on December 3, 2010. They sought a nondischargeable judgment against Defendants Dipakkumar ("Danny") Vanmalibhai Patel and Padmaben ("Patty") Dipakkumar Patel in excess of $500,000 pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6).

Usha and H.K. asserted such claims in their individual capacities and derivatively on behalf on Roshan Hospitality, LLC ("Hospitality"), Usha and Danny's jointly owned limited liability company.

By a pretrial order entered October 19, 2012 (the "Pretrial Order"), Plaintiffs set forth the general nature of their claims. Among other things, Plaintiffs asserted that Defendants:

(a) Failed to provide accurate and complete information about Hospitality;

(b) Co-mingled the funds and assets of Hospitality with their personal funds and the funds of other separately owned businesses, which resulted in inaccurate financial reporting, divestment of LLC profits, and damages to Usha…;

(c) Failed to accurately report cash income of Hospitality and falsified reports of cash income to members (including Usha);

(d) Embezzled and diverted cash and assets from Hospitality for personal use; and

(e) Forged Usha's signature on banking documents and checks without her knowledge or consent.

The Pretrial Order provides that only the claims set forth therein were preserved for trial.

The trial spanned about nine days over the course of several years.[1] Plaintiffs presented thousands of pages of exhibits and hours of testimony about various ways in which Defendants embezzled from Usha and from Hospitality. After the trial concluded, the Court set a briefing schedule to crystallize the issues. *See* Docket No. 134 (the "Order Setting Post-Trial Deadlines). The Court directed that Plaintiffs, in their opening brief, identify each category of alleged

---

[1] The trial began in November 2012. The Court adjourned twice, in late 2012 and early 2013. First, the Court allowed Plaintiffs to supplement their expert report. Then, at the parties' request, to permit them to attend mediation. By an order entered February 19, 2013, the Court directed the parties to contact chambers staff to request a new trial setting if the mediation was unsuccessful. The mediation was unsuccessful, but the parties never requested a new trial setting. In late 2013 or 2014, Plaintiffs' then lead counsel retired. Plaintiffs' new lead counsel entered an appearance in June 2014. Around the same time, the Court conducted a status conference to get the case back on track, during which a new trial was set. The Court later continued the trial at the request of a party. The trial concluded, and post-trial briefing was complete, in spring 2015.

damages, whether such category could form the basis for a direct claim,[2] and the dollar amount in each category. Defendants were given an opportunity to respond, to which Plaintiffs could then reply. The parties were also asked to include a discussion of whether Plaintiffs' bankruptcy case impacted the Court's analysis on causation and damages.

Plaintiffs identified 11 categories of damages stemming from Defendants' alleged embezzlement, totaling $581,473.73. Plaintiffs identified direct claims for, inter alia: (1) "funds taken from Usha Patel line of credit for Defendants' personal use[,]" and (2) "[i]ncome reported on K-1 for [Hospitality] issued to Usha Patel (IRS Form 1065) for 2010 [for dividends not received by Usha Patel]."[3] In their response brief, Defendants did not argue that Plaintiffs failed to preserve such claims in the Pretrial Order or that the claims had otherwise been waived. Instead, Defendants argued the facts and evidence in the record were insufficient to support the claims, and that the claims lacked merit as a matter of law.

On August 21, 2015, the Court entered a memorandum opinion (Docket No. 140) and a money judgment in favor of Plaintiffs in the amount of $35,946 (Docket No. 141) (respectively, the "Memorandum Opinion" and the "Judgment"). Even though it appeared Patty and Danny misappropriated a fair amount of money, the Court determined most claims could not be asserted by Usha. Plaintiffs therefore recovered about 6% of their requested damages. The Court made the following findings and conclusions which are relevant to the awarded damages:

(a) Around 2003, Usha obtained a line of credit from Wells Fargo in the amount of $29,000. Wells Fargo issued the line of credit jointly in the name of Usha, individually, and Hospitality as a source of payment of Hospitality's necessary expenses. The line of credit was entrusted to Patty and Danny, who fraudulently misappropriated all of the funds to pay personal

---

[2] Plaintiffs waived all derivative claims, so the brief included argument about whether, inter alia, any given claim could be asserted as a direct claim.

[3] In addition to identifying certain categories as direct claims, Plaintiffs argued in the alternative that all damages stemmed from direct claims under *Clark v. Sims*, 219 P.3d 20, 24 (N.M. Ct.App. 2009), which relaxes the traditional distinction between direct and derivative claims in the context of closely held corporations.

-3-

expenses rather than Hospitality's operating expenses. Patty and Danny never repaid the funds to Usha.

(b) Defendants failed to prove that Usha mitigated any damages stemming from such misappropriation by discharging her debt to Wells Fargo.

(c) Hospitality made a distribution to Usha in 2010 in the amount of $6,946, which was entrusted to Patty and Danny. Based on Usha's testimony, which the Court found credible, Usha did not receive the distribution. Patty and Danny fraudulently misappropriated those funds for their own benefit.

(d) The debts stemming from the line of credit and the 2010 distribution are nondischargeable under 11 U.S.C. § 523(a)(4) (embezzlement).

Fourteen days after entry of the Memorandum Opinion and Judgment, Defendants filed the instant Motion, which has been fully briefed.

## DISCUSSION

Defendants ask the Court to amend the Memorandum Opinion and Judgment pursuant to Fed.R.Civ.P. 59(e), made applicable to adversary proceedings by Fed.R.Bankr.P. 9023. Grounds for relief under Rule 59(e) include: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *U.S. v. Huff,* 782 F.3d 1221, 1224 (10th Cir. 2015) (quoting *Servants of the Paraclete v. Does,* 204 F.3d 1005, 1012 (10th Cir. 2000)). Reconsideration may also be warranted when "the court has obviously misapprehended a party's position on the facts or the law, or the court has mistakenly decided issues outside of those the parties presented for determination." *In re Sunflower Racing, Inc.*, 223 B.R. 222, 223 (D.Kan. 1998).[4] However, Rule 59 does not afford parties seeking relief an opportunity to raise new arguments, or to rehash issues previously

---

[4] *See also Jaramillo v. Government Employees Ins. Co.,* 573 Fed.Appx. 733, 739 (10th Cir. 2014) (a motion to reconsider is appropriate where the court has misunderstood facts or arguments); *U.S. v. Ibarra,* 920 F.2d 702, 706 n.3 (10th Cir. 1990), *reversed on other grounds* by 502 U.S. 1 (1991) (A "motion to reconsider would be appropriate where … the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties.").

addressed by the Court. *Huff,* 782 F.3d at 1224.

Defendants assert the Court misapprehended the facts and decided issues that were not presented for determination. Specifically, they argue: (1) Plaintiffs failed to preserve the claims relating to the line of credit and the 2010 distribution (together the "Claims"); (2) the Court's finding that Patty and Danny misappropriated Usha's 2010 distribution is erroneous; and (3) Usha failed to prove she was damaged by Patty and Danny's misuse of the line of credit. Defendants also seek to reopen the evidence to allow them to present additional testimony and exhibits that would allegedly negate all of their liability.

I. Preservation of the Claims

As an initial matter, Defendants assert the Claims were not raised in the complaint, Plaintiffs' discovery responses, the Pretrial Order, or at trial. Defendants also argue that to the extent the line of credit claim was properly preserved, they had no notice Plaintiffs intended to assert it as a direct claim.

The Court disagrees. The complaint and any discovery responses were superseded by the Pretrial Order. *See* Pretrial Order, ¶ X ("The claims and defenses set forth in the pleadings are superseded by this order.").[5] The Pretrial Order is broad enough to include the Claims. It preserves claims in the "general nature" of embezzlement, co-mingling funds, failing to report business income, divestment of profits, and forging Usha's signature on banking documents and checks. Claims relating to the misappropriation of partnership profits and Usha's line of credit serve as specific examples of such misconduct.

The Claims were also raised at trial. Both Usha and her expert testified that Usha never

---

[5] *See also Rockwell Intern. Corp. v. U.S.,* 549 U.S. 457, 474 (2007) (The "final pretrial order … supersede[s] all prior pleadings and 'control[s] the subsequent course of the action'"); *Niemeyer v. Williams,* 910 F.Supp.2d 1116, 1129 (C.D.Ill. 2012) ("A final pretrial order will supersede all prior filings.").

-5-

received distributions to which she entitled, including all distributions after 2006.[6] *See* January 30, 2013 trial transcript, p. 89, lines 9-14 (Docket No. 118). Counsel questioned both Patty and Usha about the line of credit, including whether it belonged to Usha individually and whether she authorized Patty to make draws. *Id.* at p. 79-81; Testimony of Patty Patel from December 16, 2014.[7] The line of credit claim was even used as an example in the Order Setting Post-Trial Deadlines. It states:

> In their [opening] brief, Plaintiffs must include a list of the categories of damages sought…. For example, Plaintiffs should identify the amount sought in connection with the insurance proceeds from the truck, *the line of credit*, the deposit of LLC funds in the individual Defendants' bank account, etc.

(emphasis added).

Finally, even if the Claims were not the primary focus at trial, they were clearly set forth in Plaintiffs' post-trial opening brief. The Court established the briefing procedure, in light of the challenging record, so that all parties were on the same page regarding the exact issues submitted for determination. If Defendants believed Plaintiffs did not preserve one or both of the Claims, or they lacked notice of any direct claims, Defendants needed to object on that basis in their post-trial response brief before the Court made its ruling. Having failed to so, such objection is waived. The Court will therefore not alter the Judgment on the grounds that Plaintiffs failed to preserve or properly raise the Claims.

## II. The 2010 Distribution

Defendants next ask the Court to reconsider its finding that they fraudulently misappropriated Usha's cash distribution from Hospitality for the 2010 tax year. According to

---

[6] Although the Court discounted the expert's testimony, Plaintiffs pointed to Hospitality's 2010 tax return as additional evidence to support the claim. *See* Exhibit 14-6.

[7] Because over 20 months lapsed between the second and third portions of the trial, the parties provided unofficial transcripts of parts one and two. The last portion of the trial, which includes Patty's testimony from December 2014, was not transcribed.

Defendants, there is no evidence that Hospitality actually distributed the money, or if it did, that Usha did not receive it.

After carefully reviewing the record, the Court is convinced the evidence supports its findings regarding the 2010 distribution. Hospitality's 2010 tax return, admitted as Exhibit 14-6, provides evidence that Hospitality made the distribution. The "Partners' Capital Account Summary" shows that Usha "withdrew" $6,946. *See* Exhibit 14-6, p. 14-6-17. Schedule K-1 also lists a "distribution" to Usha in the amount of $6,946. *Id.* at 14-6-23.

Contrary to Defendants' assertions, Usha testified that she did not actually receive any distributions for the 2010 tax year. When asked "Did you ever receive any profits from the LLC?" Usha answered "Yes. In 2006, I got $1,000, and after that I haven't received anything." *See* January 30, 2013 trial transcript, p. 89, lines 9-14 (Docket No. 118). The Court deemed this testimony credible. Other testimony throughout trial also established that Patty prepared the accounting records underlying the tax returns and that she and Danny controlled all money flowing into and out of Hospitality. Based on this evidence, and on the overall facts and circumstances of the case, the Court drew the inference that Defendants embezzled Usha's 2010 distribution. In the Court's view, such inference is not erroneous.

Alternatively, Defendants seek to reopen the evidence pursuant to Rule 59(a)(2) to present additional testimony and documents negating their liability. That rule allows the Court, after a bench trial, to "open the judgment…, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." As with Rule 59(e), any proposed supplemental evidence offered under Rule 59(a)(2) must be newly discovered. *Waugh v. Williams Companies, Inc., Long Term Disability Plan,* 2009 WL 1090069, *3 (10th Cir. 2009) ("[I]n some limited situations," Rule 59(a)(2) can be used "to present newly

-7-

Case 10-01200-j    Doc 155    Filed 06/15/16    Entered 06/15/16 17:18:23 Page 7 of 13

discovered evidence.").[8] Rule 59(a)(2) does not allow parties "to introduce … evidence that was [originally] available … to advance new theories or to secure a rehearing on the merits." *Chavez v. City of Albuquerque,* 640 F.Supp.2d 1340, 1343 (D.N.M. 2008) (citing *Lyons v. Jefferson Bank & Trust,* 793 F.Supp. 989, 991 (D.Colo.1992), *aff'd,* 994 F.2d 716 (10th Cir.1993)).

Defendants seek to present: (1) supplemental testimony that Usha's 2010 distribution was part of the $84,236.85 in cash stored in Hospitality's safe in late 2011; (2) a trust account deposit slip dated October 14, 2011 showing that $84,236.85 was placed into their counsels' trust account; and (3) a cancelled check dated August 24, 2012 showing such amount was paid to Cienna Capital Funding, LLC, a creditor of Hospitality. Defendants have not argued the supplemental evidence is newly discovered or was otherwise unavailable at the time of the trial. Instead, they essentially argue that if they knew the Court would give credence to Plaintiffs' claim relating to the 2010 distribution, they would have presented additional evidence. If Plaintiffs believed the claim was not preserved, as discussed above, they needed to raise that issue in their post-trial response brief or object to admission of evidence about the 2010 distribution at trial. Otherwise, the Court cannot "grant a new trial [under Rule 59(a)(2)] simply because … the losing party believes it can present a better case if afforded a second chance." *Libutti v. U.S.*, 178 F.3d 114, 119 (2nd Cir. 1999). Defendants' request to present supplemental evidence in connection with the 2010 distribution is therefore denied.

---

[8] *See also Precision Pine & Timber, Inc. v. U.S.,* 596 F.3d 817, 833 (Fed.Cir. 2010) (affirming denial of Rule 59(a)(2) request where the evidence "was not actually new, but simply … [a] … calculation[] using evidence already presented and tested at trial"); *U.S. v. Carufel,* 101 F.3d 706 (9th Cir. 1996) (Appellant "failed to present new evidence to support his claim with Fed.R.Civ.P. 59(a)(2) motion…"); *Blann v. Rogers,* 2014 WL 6895592, *1 (D. Kan. 2014) (Any supplemental evidence under Rules 59(e) and 59(a)(2) must be "newly discovered"); *HSP Mechanical v. JMR Construction Corp.,* 2014 WL 5451987, *2 (N.D. Cal. 2014) (The Rule 59(a)(2) standard "is equivalent to the standard for altering or amending a judgment under Rule 59(e)."); *Wright v. U.S.,* 2014 WL 2993790, *3 (E.D. Okla. 2014) (Evidence must be "newly discovered" under Rule 59(a)(2)).

### III. The Line of Credit

Finally, Defendants seek reconsideration of the Court's conclusion that they fraudulently misappropriated $29,000 from Usha's line of credit. Defendants assert Usha failed to prove she was damaged by the misappropriation, and that they had no obligation to prove such damages were mitigated when she received a Chapter 7 discharge. Alternatively, Defendants seek to reopen the evidence to prove that Usha discharged her obligation on the line of credit.

*A. Damages in Connection with Embezzlement Claims*

Defendants are correct that, as with all claims under § 523(a), the plaintiff must show damages stemming from the embezzlement. However, the damages analysis for embezzlement differs somewhat from that of other claims. Embezzlement consists of "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *In re Sun,* 535 B.R. 358, 367 (10th Cir. BAP 2015) (quoting *In re Wallace*, 840 F.2d 762, 765 (10th Cir.1988)). The definition has been broken down as follows: (1) a creditor entrusted his or her property to the debtor; (2) the debtor appropriated the property for a use other than the use for which it was entrusted; and (3) the circumstances indicate fraud. *In re Bucci*, 493 F.3d 635, 644 (6th Cir. 2007).

Absent from this definition is an explicit reference to damages, as misappropriating another's property necessarily causes a loss to the extent of the property's value. *See, e.g., In re Hanif,* 530 B.R. 655, 671 (Bankr. E.D.Mich. 2015) (noting that damages for embezzlement and common law conversion equal the value of the misappropriated property). Compare this to misrepresentation claims under § 523(a)(2)(A), which include a separate element for loss. *In re Vickery,* 488 B.R. 680, 687 (10th Cir. BAP 2013) (The elements are: "The debtor made a false representation; the debtor made the representation with the intent to deceive the creditor; the

-9-

creditor relied on the representation; the creditor's reliance was reasonable; and the debtor's representation caused the creditor to sustain a loss.") (quoting *In re Young*, 91 F.3d 1367, 1373 (10th Cir.1996)).

In embezzlement cases involving the misuse of credit, courts presume a loss equal to the amount of unauthorized credit card charges or line of credit draws absent any contrary evidence. *See In re Ross,* 478 B.R. 715 (Bankr. W.D.N.C. 2012) (awarding as damages under § 523(a)(4) the entire amount of unauthorized draws managing member took from an LLC's line of credit); *In re Wish,* 472 B.R. 763, 782-783 (Bankr. N.D.Ill. 2012) (LLC investor was entitled to $100,000 in damages under § 523(a)(4) against corporate officer who withdrew such amount from the company's line of credit for personal expenses).[9] Plaintiffs satisfy their initial burden by showing the charges or draws were for personal use, and there is no discussion about whether they actually paid the charges. *Id.* This is true even when the embezzlement is analyzed as a form of fraud under § 523(a)(2)(A). *See In re Hathaway*, 364 B.R. 220 (Bankr. E.D.Va. 2007) (where manager misused company credit cards for personal expenses, the court awarded damages under § 523(a)(2)(A) in the amount of the unauthorized charges); *In re Petersen,* 296 B.R. 766, 782-785 (Bankr. C.D.Ill. 2003) (where employee misused the company credit card, the measure of damages under § 523(a)(2)(A) was the amount charged for personal expenses).

In the case of unauthorized use of a plaintiff's personal credit, the damage is not necessarily limited to the amount of the unauthorized charges. As one court aptly pointed out:

[E]ven if a credit card transaction is not viewed as one involving an appropriation of the

---

[9] *See also In re* Spivey, 2010 WL 3980132, * 17 (Bankr. E.D.Tenn. 2010) (awarding damages in the amount of $187,492.93 pursuant to § 523(a)(4), which represents the amount the LLC managing member withdrew from the company's line of credit for personal use); *Fernandez v. Havana Gardens, LLC*, 562 Fed.Appx. 854 (11th Cir. 2014) (damages award under § 523(a)(4) consisted of all unexplained charges the managing member made to the LLC's credit card); *In re Hantla,* 2011 WL 1355867, * 5 (Bankr. N.D.Tex. 2011) (Declaring nondischargeable under § 523(a)(4) all unauthorized charges defendant made to employer's credit cards); *In re Baker,* 2014 WL 948656 (Bankr.D.N.M. 2014) (same).

-10-

Case 10-01200-j    Doc 155    Filed 06/15/16    Entered 06/15/16 17:18:23 Page 10 of 13

> borrower's own funds, it does at least involve an appropriation of the borrower's credit, which is itself an asset (purchased and paid for by interest and other financing charges) and capable of being misappropriated by one in lawful possession of it.

*In re McQuillin,* 509 B.R. 773, 785 (Bankr. D.Mass. 2014). Additional losses associated with carrying a debt that was fraudulently obtained by another party could include, for example, a higher interest rate in the future resulting from a lower credit score. The plaintiff bears the burden of establishing any such additional loss.

Once Plaintiffs satisfy their initial burden by showing the charges or draws were for personal instead of business use, the burden shifts to Defendants to show why Plaintiffs are not entitled to the asserted damages. The court in *In re Green,* 2012 WL 3028462 (Bankr. W.D.Mo. 2012) applied this burden-shifting analysis in an embezzlement case involving the unauthorized use of credit. *Green* held that a plaintiff establishes a prima facie case for damages by demonstrating the defendant fraudulently used the company's credit for personal expenses. *Id.* at * 6. The burden then shifts to the defendant to show why the plaintiff is not entitled to damages in the misappropriated amount by showing, for example, that certain of the charges were business related. *Id. Cf Deutsche Anlagen–Leasing GMBH v. Kuehl,* 489 N.Y.S.2d 195, 197 (N.Y. 1st Dep't 1985) (Misappropriation of corporate funds by executive officer was "more than sufficient to establish a prima facie claim for damages").

Here, Usha demonstrated she entrusted her $29,000 personal line of credit to Defendants for the payment of Hospitality's operating expenses. Defendants instead used all of the funds to pay their own personal expenses. Usha therefore established a prima facie case for $29,000 in damages. In response, Defendants produced checks they allegedly used to repay the funds. The Court discounted Patty's testimony that the checks were used to repay the line of credit because

it was not credible.[10]

Alternatively, Defendants assert that even if they did not repay the funds, Usha was not damaged because she discharged her liability under her line of credit in her personal Chapter 7 bankruptcy case. Defendants did not reference Usha's Chapter 7 discharge during trial or put on any other evidence that she was not damaged by the misappropriation. In fact, Defendants never argued Usha's discharge negated their liability until the Court raised the question during closing argument. Although the Court took judicial notice of the docket in Usha's bankruptcy case filed some three years after Defendants misappropriated the funds, as explained in the memorandum opinion, it did not establish that Usha discharged the obligation created by Defendants' unauthorized use of the line of credit. Defendants did not rebut the presumption that by misappropriating $29,000 from Usha's line of credit, she was damaged to that extent. The Court will therefore not reconsider its conclusion that Usha is entitled to a nondischargeable judgment in the amount of $29,000 under § 523(a)(4).

*B. New Evidence on Damages*

Alternatively, Defendants seek to present supplemental evidence under Rule 59(a)(2) that Usha obtained a discharge of any personal liability in connection with the line of credit. As discussed above, Defendants had sufficient notice of the direct line of credit claim, and such evidence is not newly discovered. Usha obtained her Chapter 7 discharge in 2010 or 2011, well before the trial concluded in 2015. Consequently, the Court will not permit Defendants to present supplemental evidence in connection with Usha's line of credit claim.

---

[10] Defendants also take issue with the Court's ruling because the memo notation on at least one check read "for credit card." Defendants now argue such notation meant the check was used to repay the line of credit. This is inconsistent with Patty's testimony at the December 16, 2014 portion of the trial, in which she suggested that the line of credit (which was in the name of Hospitality and Usha) was not accessible by credit card. When explaining how she often used personal credit cards for business expenses, counsel asked: "Did Hospitality ever have a credit card in its own name?" Patty answered: "No, no cards, none."

CONCLUSION

After carefully reviewing the testimony, exhibits, and relevant law, the Court concludes reconsideration is not warranted. Defendants had notice of the claims on which Plaintiffs prevailed, and the evidence supports the Court's findings and conclusions regarding the 2010 distribution and the line of credit. Defendant's Motion is therefore denied. The Court will enter a separate order consistent with this memorandum opinion.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: June 15, 2016

COPY TO:

George Moore
Arin Elizabeth Berkson
3800 Osuna Rd NE, STE #2
Albuquerque, NM 87109

Shay E Meagle
6500 Jefferson St. NE, Ste. 260
Albuquerque, NM 87109-3490