UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: DIPAKKUMAR VANMALIBHAI PATEL and　　　　　No. 7-10-12627 JA
　　　　　PADMABEN DIPAKKUMAR PATEL,

　　　　　Debtors.

HASMUKHBHAI K. PATEL and
USHABEN H. PATEL, individually
and in their capacity as members of
ROSHAN HOSPITALITY, LLC,

　　　　　Plaintiffs,

v.　　　　　　　　　　　　　　　　　　　　　　　　Adversary No. 10-1200 J

DIPAKKUMAR VANMALIBHAI PATEL,
PADMABEN DIPAKKUMAR PATEL and
ROSHAN HOSPITALITLY, LLC,

　　　　　Defendants.

## MEMORANDUM OPINION

Before the Court is the motion to tax costs filed by Plaintiffs. *See* Docket No. 146 (the "Motion"). Plaintiffs obtained a nondischargeable judgment against Defendants in the amount of $35,946 on two claims for embezzlement under 11 U.S.C. § 523(a)(4). Plaintiffs now seek reimbursement of $9,750.25 in litigation costs, including fees for copying, transcription services, and witness travel. After carefully reviewing the Motion, the cost bill and its supporting documentation, and the relevant law, the Court concludes Plaintiffs are entitled to recover $5,942.35 in costs.

BACKGROUND

Plaintiffs Ushaben ("Usha") Patel and Hasmukhbhai K. ("H.K.") Patel filed this adversary proceeding on December 3, 2010. They sought a nondischargeable judgment against

Defendants Dipakkumar ("Danny") Vanmalibhai Patel and Padmaben ("Patty") Dipakkumar Patel in excess of $500,000 pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6). Usha and H.K. asserted such claims in their individual capacities and derivatively on behalf on Roshan Hospitality, LLC ("Hospitality"), Usha and Danny's jointly owned limited liability company.

The trial spanned about nine days over the course of several years. It first began in November 2012. The Court adjourned the trial twice, in late 2012 and early 2013. First, the Court adjourned the trial to allow Plaintiffs to supplement their expert report. Then, at the parties' request, the Court adjourned the trial to permit them to attend mediation. By an order entered February 19, 2013, the Court directed the parties to contact chambers staff to request a new trial setting if the mediation was unsuccessful. The mediation was unsuccessful, but the parties never requested a new trial setting. In mid 2014, Plaintiffs switched counsel, at which time the Court conducted a status conference to get the case back on track and set a new trial date. Since over a year had lapsed since the trial adjourned, the Court directed the parties to prepare a transcript of the trial using the electronic recording posted to CM/ECF. *See* Clerk's Minutes of April 9, 2014 Status Conference, Docket No. 113. The trial concluded, and post-trial briefing was complete, in the spring of 2015.

Plaintiffs presented thousands of pages of exhibits and hours of testimony to demonstrate that Defendants embezzled from Usha and from Hospitality.[1] Patty was the main witness. Plaintiffs also called as fact witnesses Usha, H.K., Mahendra Enaker (an in-law of Usha and Danny who testified about his own salary as a hotel manager), and R. Kelly McFarland (Hospitality's CPA who testified about the company's tax returns and accounting practices).

---

[1] The list of admitted exhibits was filed as Docket No. 133.

James Trippon testified as Plaintiffs' forensic accounting expert about the amount of alleged losses stemming from Defendants' inappropriate business practices. Mr. Trippon's expert report and testimony were not particularly helpful because he classified as "fraud" any suspect transaction without making later adjustments when evidence showed there was a valid business purpose for the transaction. Danny did not testify, but the portion of his deposition relating to his educational background was read into the record. Patty's deposition was not admitted, but the parties made argument that her deposition answers were inconsistent with her testimony.

In their post-trial briefs, Plaintiffs identified 11 categories of damages stemming from Defendants' alleged embezzlement, totaling $581,473.73. Most related to instances where Defendants siphoned money away from Hospitality by overcompensating themselves, using company funds for personal expenses, and misappropriating cash receipts. Plaintiffs identified direct claims based on, among other things, Defendants' misappropriation of funds from Usha's line of credit and of Usha's cash distribution from Hospitality for the 2010 tax year.

On August 21, 2015, the Court entered a memorandum opinion (Docket No. 140) and a money judgment in favor of Plaintiffs in the amount of $35,946 (Docket No. 141) (respectively, the "Memorandum Opinion" and the "Judgment"). Even though it appeared Patty and Danny may have misappropriated a fair amount of money, the Court determined most claims could not be asserted by Usha. The Court made the following findings and conclusions relating to the awarded damages:

(a) Around 2003, Usha obtained a line of credit from Wells Fargo in the amount of $29,000. Wells Fargo issued the line of credit jointly in the name of Usha, individually, and Hospitality as a source of payment of Hospitality's necessary expenses. The line of credit was entrusted to Patty and Danny, who fraudulently misappropriated all of the funds to pay personal expenses rather than Hospitality's operating expenses. Patty and Danny never repaid the funds to Usha.

(b) Defendants failed to prove that Usha mitigated any damages stemming from such

-3-

misappropriation by discharging her debt to Wells Fargo.

      (c) Hospitality made a distribution to Usha in 2010 in the amount of $6,946, which was entrusted to Patty and Danny. Based on Usha's testimony, which the Court found credible, Usha did not receive the distribution. Patty and Danny fraudulently misappropriated those funds for their own benefit.

      (d) The debts stemming from the line of credit and the 2010 distribution are nondischargeable under 11 U.S.C. § 523(a)(4) (embezzlement).

      The Court subsequently denied Defendants' request to alter or amend the Judgment, which is now final and not subject to appeal.

## DISCUSSION

      Plaintiffs seek to recover the costs they incurred in litigating this nondischargeability proceeding, including fees for transcription, depositions, copying, witness travel, and the like. Fed.R.Bankr.P. 7054 authorizes the Court to "allow costs to the prevailing party except when a statute of the United States or [the Federal Rules of Bankruptcy Procedure] otherwise provide." The prevailing party bears the burden of establishing the specific costs to which it is entitled, and that the amounts are reasonable. *Cohlmia v. St. John Medical Center,* 693 F.3d 1269, 1288 (10th Cir.2012) (internal quotations omitted). Thereafter, "the burden shifts to the non-prevailing party to overcome the presumption that these costs will be taxed." *Id*. While the costs "proposed by prevailing parties … should be given careful scrutiny," the Court "must provide a valid reason for denying" any requested costs. *In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1144, 1147 (10th Cir.2009).

      The trial "court possesses broad discretion in awarding costs." *Williams Sec. Litigation,* 558 F.3d at 1148; *Allison v. Bank One-Denver*, 289 F.3d 1223, 1248 (10th Cir.2002). "The … exercise of this discretionary power turns on whether or not the costs are for materials necessarily obtained for use in the case." *Allison,* 289 F.3d at 1248.

Defendants do not dispute that Plaintiffs are the prevailing parties; they concede Plaintiffs are entitled to recover the adversary filing fee and copy charges for exhibits relating to the line of credit and 2010 distribution. However, Defendants argue that any remaining costs should be disallowed because they were not incurred in connection with the claims upon which Plaintiffs prevailed. Defendants also dispute the necessity of certain categories of costs. The Court will address each argument below.

## I. Apportionment Between Successful and Unsuccessful Claims

As Defendants point out, Plaintiffs incurred most of the requested costs to present evidence about injuries to the corporation, while the Judgment was predicated on the injuries Usha suffered individually. Aside from the filing fee, Defendants therefore assert the only taxable costs are the copy charges for Hospitality's 2010 tax return showing her missing distribution and the two checks drawn on Usha's line of credit.

The Court disagrees. Trial courts have discretion to reduce a cost award when the prevailing party only partially succeeds, or where neither side really prevails. *Barber v. T.D. Williamson, Inc.,* 254 F.3d 1223, 1235 (10th Cir. 2001). However, generally courts may not differentiate between the costs associated with successful and unsuccessful claims, as doing so would require them to "employ the benefit of hindsight in determining whether [the requested] costs are reasonably necessary to the litigation of the case." *In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1144, 1148 (10th Cir.2009). The determination must be made "solely on the particular facts and circumstances at the time the expense was incurred." *Id.* Thus, "materials may be taxable even if they are not strictly essential to the [trial] court's resolution of the case" or "ultimately not used to dispose of the matter." *Id.[2] See also Schwartz v. Rent-A-Wreck of*

---

[2] For example, the Tenth Circuit has held that trial courts cannot "penalize a party who happens to prevail on a dispositive motion by not awarding costs associated with that portion of discovery which had no

-5-

*America,* 2016 WL 3906581, *3 (D.Md. 2016) ( "The presumption in the law is that the prevailing party is entitled to costs, regardless of the amount of damages awarded…. The presumption is not that a prevailing party is entitled only to partial costs which can be tied directly to a successful claim.").

Here, Plaintiffs had a viable (though ultimately unsuccessful) theory to recover against the corporation under *Clark v. Sims*, 219 P.3d 20, 24 (N.M. Ct.App. 2009), which relaxes the traditional standard between direct and derivative claims. The costs associated with Plaintiffs' derivative claims therefore appeared necessary at the time they were incurred for proper preparation of the case. Apportioning Plaintiffs' litigation costs between their successful direct claims and their unsuccessful derivative claims could only be accomplished with the benefit of hindsight. Consequently, the Court will not limit Plaintiffs' recovery to the costs associated with their direct claims against Usha.

## II. The Allowability of Specific Costs

In addition to their blanket objection, Defendants also challenge the necessity of many specific costs. Section 1920 of title 28 enumerates the costs that are taxable under Rule 7054. *See Arlington Cent. School Dist. Bd. Of Educ. v. Murphy,* 548 U.S. 291, 298 (2006) ("the term 'costs' in Rule 54(d) is defined by the list set out in § 1920").[3] Under that statute, taxable costs include:

---

bearing on the dispositive motion, but which appeared otherwise necessary at the time it was taken for proper preparation of the case." *Callicrate v. Farmland Indus., Inc.,* 139 F.3d 1336, 1340 (10th Cir.1998).
[3] *See also In re Holy Hill Community Church,* 2016 WL 878262, * 5 (9th Cir. BAP 2016) (28 U.S.C. § 1920 governs the costs to be awarded under Rule 7054); *In re Chong,* 523 B.R. 236, 252 (Bankr. D.Colo. 2014) ("the Court will allow reimbursement of costs … in connection with this Adversary Proceeding in accordance with Fed.R.Bankr. P. 7054 and 28 U.S.C. § 1920"); *In re Wood,* 2014 WL 690142, * 2 (Bankr. W.D.Wis. 2014) ("Once a bankruptcy court determines, in its discretion, to allow costs to a prevailing party in an adversary proceeding … pursuant to Rule 7054(b), the appropriate statute for determining which costs to award is 28 U.S.C. § 1920.") (internal citations omitted); *In re Scully,* 2016 WL 1129263, * 12 (Bankr. D.N.J. 2016) (same).

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses; [and]
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case[.]

28 U.S.C. § 1920.[4]

New Mexico Local Rule 7054-1, which was adopted to implement § 1920, elaborates on such list. NMLR 7054-1(b) includes as allowable costs: (1) certain trial and deposition transcripts; (2) witness fees, except for compensation of an expert witness; and (3) copy fees for any exhibit requested by the Court or admitted in evidence.

All parties agree that Plaintiffs can recover the $250 adversary filing fee. The remaining costs fall into three categories: (1) transcription fees; (2) copying charges; and (3) witness costs.

### A. Transcription Fees

Plaintiffs seek $6,137.66 in fees for transcribing the first five days of trial, Patty and Danny's depositions, and the first meeting of creditors (the "341 Meeting"). NMLR 7054-1(d)(1) provides that "the cost of an original trial … transcript is taxable when authorized by the court before transcription." On April 9, 2014, the Court authorized and directed the parties to transcribe the earlier portions of the trial. The transcription costs incurred on June 3, 2014 in the amount of $1,736.18 are therefore recoverable. The transcription costs incurred on or before January 2, 2013 in the amount of $3,221.86,[5] however, are not. The Court had not authorized transcription at that point, and it was presumably done for convenience, *i.e.* so that counsel could reference the earlier testimony during the second portion of trial. *See Faragall v. Douglas*

---

[4] Unless otherwise noted, all future statutory references are to 28 U.S.C.
[5] This amount includes the following fees: (1) $1,388.33 in transcription fees for the first day of trial; (2) $1,773.53 in transcription fees for the second day of trial; and (2) a $60.00 fee incurred on December 12, 2012 to obtain the discs containing those recordings.

-7-

*County School Dist. RE 1,* 2011 WL 94540, * 18 (10th Cir. 2011) ("Costs for materials that merely add[] to the convenience of counsel are not recoverable.") (quoting *Williams Sec. Litigation,* 558 F.3d at 1147).

Costs for deposition or similar transcripts are recoverable when "the transcript was reasonably necessary for the litigation, as determined by the court." NMLR 7054-1(d)(1). *See also* 28 U.S.C. § 1920(2) (applying the same standard). Defendants contend the transcription fees associated with Patty and Danny's depositions and the 341 Meeting are not taxable because Plaintiffs did not use the documents at trial. As discussed more generally above, a transcript need not be proffered in evidence for the fees to be recoverable. *See Williams Sec.*, 558 F.3d at 1149 (rejecting the argument "that a district court may only award costs for depositions the district court actually used in deciding summary judgment"); *Allison v. Bank-One Denver,* 289 F.3d 1223, 1249 (10th Cir. 2002) ("As long as the taking of the deposition appeared to be reasonably necessary at the time it was taken, ... the taxing of such costs should be approved.").[6] Since the entire case centered on fraud, and specifically Patty and Danny's explanations for the alleged misappropriation, the Court concludes the fees for transcribing the depositions and the 341 Meeting were reasonably necessary to the litigation. Such fees total $1,179.62.

## B. Copying Charges

Next, Plaintiffs seek $2,004.88 in fees for copying various court filings, public documents, and trial exhibits. Under § 1920(4), the prevailing party can recover the costs of making any copies "where the copies are necessarily obtained for use in the case." "[T]he burden of justifying copy costs is not a high one." *Williams Sec.*, 558 F.3d at 1149. A party

---

[6] The Court also notes that Plaintiffs used the depositions to some extent. Counsel read a portion of Danny's deposition into the record and referred to Patty's deposition in preparing questions and making argument.

-8-

Case 10-01200-j    Doc 157    Filed 10/14/16    Entered 10/14/16 15:51:27 Page 8 of 11

"need not justify each copy it makes" with a description or explanation of its use. *Id.* With respect to exhibits, NMLR 7054-1(d)(4) elaborates that "the cost of copying exhibits is taxable when the exhibits are requested by the court or admitted into evidence."

Plaintiffs spent $80.59 to obtain copies of the filings in the bankruptcy case, the adversary proceeding, the state court foreclosure filings, and certain property records from Quay County. The Court relied on many of these documents in making its findings, and concludes such copy charges were reasonably necessary for the litigation.

Plaintiffs also spent $1,924.29 to copy exhibits. As well as the Court can discern, at least 75% of Plaintiffs' exhibits were admitted into evidence. The Court, in its discretion and pursuant to NMLR 7054-1(d)(4), will therefore award 75% of the copying charges, or $1,443.22.

### C. Witness Costs

Finally, Plaintiffs seek $1,357.74 in witness fees, including a total of $395 for Mr. Mcfarland, airfare for Mr. Enaker, and airfare, lodging, and rental car expenses for Mr. Trippon. NMLR 7054-1(d)(2) allows "witness fees, mileage, and subsistence costs" for any non-party fact witness who testifies as trial. Mileage and subsistence costs for expert witnesses are taxable, but the expert's fees are not unless the court appointed the expert and approved the fee. *Id.* The bill of costs must separately list the amount sought for fees, mileage, and subsistence. *Id.*

The types and amounts of taxable witness fees, mileage, and subsistence costs are governed by 28 U.S.C. § 1821. *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 445 (1987) (with respect to witness costs, "federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920"); Charles Alan Wright & Arthur R. Miller, 9A Fed. Prac. & Proc. Civ. § 2461 (3d ed.2008) ("The fees provided for in 28 U.S.C. § 1821 constitutes a limit on payment for a parties' witnesses."). Taxable witness costs include: (1) a $40 daily fee for fact

witnesses; (2) airfare at the most economical rate reasonably available; (3) hotel lodging, if the witness lives far enough to prohibit commuting; and (4) a per diem allowance equal to the rate paid to federal employees. 28 U.S.C. §§ 1821(b), (c)(1), (d)(1), and (d)(2). Section 1821 also includes a catch-all for "all normal travel expenses within and outside the judicial district." 28 U.S.C. § 1821(c)(4). Courts sometimes tax rental car charges under that section, depending on the locale, the duration of the trial, and whether a taxicab would have been more economical. *See, e.g., Helsinn Healthcare S.A. v. Teva Pharmaceuticals USA, Inc.,* 2016 WL 660601, * 9 (D.N.J. 2016) (taxing costs of witness' rental car); *Structural Metals Inc. v. S & C Elec. Co.,* 2013 WL 3790450, *5 (W.D. Tex. 2013) ("Section 1821(c)(4) includes all normal travel expenses, and a rental car is a normal travel expense."); *Kmart Corp. v. Kroger Co.,* 2014 WL 3699998, *5 (N.D.Miss. 2014) (concluding that the expenses of a rental car were unreasonable, as witness should have taken a taxicab).[7]

Plaintiffs seek $355 as a witness fee for Mr. McFarland, as well as the $40 charge for service of his subpoena. The Court will allow the latter charge in full. *See Meyers v. Hayssen Mfg. Co.,* 107 F.3d 880 (10th Cir. 1997) ("the district court did not abuse its discretion in awarding the subpoena service fee" of a non-party); *Kroth v. Wal-Mart Stores, Inc.,* 19 F.3d 33 (10th Cir. 1994) (same). However, the $355 invoice attached to Plaintiffs' cost bill shows a total charge for witness fees, mileage, and per diem without breaking out the charges for each as required by NMLR 7054-1(d)(2). Because the Court cannot ascertain whether and if the components of the charges exceed the allowed amount, the Court, in its discretion, will allow $250 of the amount sought.

The remaining witness costs are taxable. Plaintiffs seek to recover airfare in the amount

---

[7] *But see Structural Metals, Inc. v. S & C Elec. Co.*, 2013 WL 3790450, at *5 (W.D.Tex. July 19, 2013) (refusing to tax rental car charges because they are not specifically permitted under § 1821).

-10-

of $514.60 for Mr. Enaker. For Mr. Trippon, Plaintiffs seek rental car expenses in the amount of $127.97; airfare in the amount of $208.30; and hotel charges in the amount of $111.87. Both witnesses travelled from Texas. The requested costs for Mr. Trippon are particularly reasonable, as he travelled to New Mexico multiple times for the trial, and Plaintiffs are only seeking to recover one airline ticket, one night of lodging, and three days' worth of rental car charges. For a three night stay in Albuquerque, a rental car is likely more economical than a taxicab. Plaintiffs are therefore entitled to recover witness costs in the total amount of $1,252.74.

## CONCLUSION

After carefully reviewing the Motion and cost bill, Defendants' response, and the relevant law, the Court concludes Plaintiffs are entitled to recover costs in the amount of $5,942.35. Given the magnitude and complexity of this adversary proceeding, and the Court is convinced such amount is reasonable. The Court will enter a separate order consistent with this memorandum opinion.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: October 14, 2016

COPY TO:

George Moore
3800 Osuna Rd NE, STE #2
Albuquerque, NM 87109

Shay E Meagle
6500 Jefferson St. NE, Ste. 260
Albuquerque, NM 87109-3490